REDEVELOPMENT COMMISSION OF THE CITY OF WASHINGTON, NORTH CAROLINA v. J. R. ABEYOUNIS AND WIFE, JAMAL R. ABEYOUNIS.

(Filed 22 May 1968.)

**1. Eminent Domain § 9—**

A Redevelopment Commission has the power to acquire property by eminent domain, G.S. 160-462(6), and this right is to be exercised in accordance with the provisions of G.S. Chapter 40.

**2. Eminent Domain § 1—**

The exercise of the power of eminent domain is in derogation of common right, and all laws conferring such power must be strictly construed.

**3. Eminent Domain § 9—**

The petition in a proceeding by a housing authority to condemn land for a housing project must affirmatively show compliance with the statutory requirements, including the approval by the community governing body of the redevelopment plans, the contents or adequacy of the plan for redevelopment, and the nature of the public business and the specific use

to which the land will be put, and if the petition fails to allege any of these essentials it is fatally defective. G.S. 160-463.

**4. Same—**

The procedures required by G.S. 160-463 are designed to guard against arbitrary action by either the governing body of the community or the Redevelopment Commission, thereby affording protection to property owners in the affected area, and unless the procedures are strictly followed a Redevelopment Commission has no authority to exercise the power of eminent domain.

**5. Same—**

Under G.S. 160-465(2) there is an instantaneous condemnation merely by the act of the Commission paying into court the sum specified by the commissioners of appraisal.

APPEAL by both petitioner and respondents from *Peel, J.,* 16 October 1967 Session BEAUFORT Superior Court.

The petitioner, Redevelopment Commission of The City of Washington, North Carolina, seeking to condemn two lots of land belonging to respondents, filed the following Petition in the Superior Court on 2 September 1966:

"The petitioner, Redevelopment Commission of the City of Washington, North Carolina, respectfully shows to the Court:

"1.  That the Petitioner is a body corporate and politic, exercising public and essential governmental powers granted to it by its charter and under the provisions of Article 37 of Chapter 160 of the General Statutes of North Carolina.

"2.  That Petitioner possesses under the laws of the State of North Carolina the right of eminent domain to enable it to acquire properties necessary to carry out its urban redevelopment plans.

"3.  That the lands herein sought to be acquired lie within an area designated as East End Urban Renewal Area; that Petitioner has developed and obtained due approval of the plans for the redevelopment of said area; that it is reasonably necessary for petitioner to acquire fee simple title to the lands herein sought to be acquired in order to adequately carry out said redevelopment plans.

"4.  That in conformity with the redevelopment plans hereinabove referred to, petitioner is proceeding diligently with the redevelopment of said area and the acquisition of the lands necessary to carry out said plans; that petitioner has on hand or available to it sufficient funds to accomplish said plans.

"5. That petitioner has in good faith attempted to purchase property herein sought to be acquired from the respondents and has offered respondents fair and just compensation for said property; that petitioner has been unable to acquire said property by negotiation and that compensation therefor must be established pursuant to the provisions of Chapter 40 of the General Statutes of North Carolina.

"6. That the lands herein sought to be acquired by petitioner are described as follows:"

(First and Second Parcels are here described by metes and bounds in the Petition.)

"7. That petitioner is informed and believes and upon such information and belief alleges that the owners of the lands hereinabove described and their places of residence and ages, if minors, so far as the same can by reasonable diligence be ascertained, together with the holders of liens or encumbrances thereto, are as follows:

"J. R. Abeyounis               409 Bonner Street
                               Washington, North Carolina

"Jamal R. Abeyounis    .    409 Bonner Street
                               Washington, North Carolina

"8. That the interest in the above lands sought to be acquired is a fee simple title free and clear of all liens and encumbrances.

"WHEREFORE, petitioner prays:

"1. That this Court enter an order for the appointment of three competent and disinterested freeholders, residing in Beaufort County, whose duty it shall be to appraise the value of the property herein sought to be acquired by petitioners as above set out and that the Court fix a time and place of the first meeting of said Commissioners.

"2. For a decree declaring petitioner the owner of said lands upon payment of just compensation therefor to be fixed by the Commissioners in accordance with law.

"3. For such other and further relief as may be just and proper in the premises."

By Answer respondents admit all of the allegations of the Petition except those contained in paragraphs 4 and 5 thereof.

Upon exceptions to the award of the commissioners of appraisal, the issue of just compensation was submitted to and answered by a jury at the 16 October 1967 Session. Thereafter respondents demurred *ore tenus* to the Petition for failure to state a cause of action, and moved in arrest of judgment. The trial judge sustained the demurrer, arrested judgment, and dismissed the action.

From the order sustaining the demurrer, arresting judgment, and dismissing the action, petitioner appeals.

Respondents gave notice of appeal, assigning as error rulings by the trial judge upon admissions and exclusions of evidence, and portions of the charge.

*William P. Mayo, attorney for petitioner, appellant-appellee.*

*Wilkinson and Vosburgh by James R. Vosburgh, attorneys for respondents, appellants-appellees.*

BROCK, J.  One of the powers granted to a Redevelopment Commission under G.S. Chapter 160 is the power to acquire property by eminent domain. G.S. 160-462 (6). Under the Urban Redevelopment Law as originally enacted in 1951, this power was to be exercised in the manner provided by law for the exercise of such right by municipalities. Chapter 1095, sec. 12, Session Laws of 1951, codified as G.S. 160-465. The manner provided by law for the exercise of the right of eminent domain by municipalities is set out in G.S. 160-205, which in turn prescribes for municipalities the manner and procedure in G.S., Chap. 40, Art. 2 (G.S. 40-11, *et seq.*). In 1965 the Legislature amended G.S. 160-465 to provide that a Redevelopment Commission may exercise the right of eminent domain in accordance with the provisions of G.S. Chap. 40, Art. 2. Chap. 679, sec. 3, Session Laws of 1965. This latter amendment made no change in the basic prerequisites to a Redevelopment Commission's gaining the authority to exercise the power of eminent domain; it merely abandoned reference to procedures by municipalities. Therefore the basic prerequisites to a Redevelopment Commission's gaining the authority to exercise the power of eminent domain are now, and at all times have been, the prerequisite procedures required by G.S., Chap. 40, Art. 2, and Chap. 160, Art. 37, with the modifications as now set out in G.S. 160-465. It follows then ˝that the prerequisites to gaining authority to exercise the power are the same as those applicable at the time of the decision in *Redevelopment Commission v. Hagins,* 258 N.C. 220, 128 S.E. 2d 391 (1962).

The allegations in the present Petition are very similar to those condemned by the opinion in the first *Hagins* case, *supra*. There the Supreme Court held to be fatal the failure of the Commission to show by its allegations that the provisions of G.S. 160-463 had been complied with. Similarly, in the present case, the petitioner has failed to show by its allegations that the requirements of G.S. 160-463 have been complied with. The statute under which the petitioner purports to proceed (G.S. 40-12) requires that the condemning corporation must state in its Petition ". . . in detail the nature of such public business, and the specific use of such land."

Petitioner urges that the allegations of paragraph 3 of the Petition, which are admitted by the Answer, supplies the showing of a compliance with G.S. 160-463 as was approved in the second *Hagins* case. *Redevelopment Commission v. Hagins*, 267 N.C. 622, 148 S.E. 2d 585 (1966). We do not agree with this contention.

The Petition of the Redevelopment Commission is not set out in the opinion in the second *Hagins* case, and in order that the difference may be made apparent we set forth here in full the Petition which was before the Supreme Court in the second *Hagins* case:

"PETITION FOR CONDEMNATION.

"COMES Now the petitioner, Redevelopment Commission of Greensboro, and respectfully shows unto the Court:

"I. That the petitioner is a body politic and corporate, having and exercising the rights, powers and authority conferred by Chapter 75 of the Ordinances of the City of Greensboro, as amended, by the applicable General Statutes of North Carolina, and powers contained in its Article of Incorporation.

"II. That on the 15th day of October, 1951, the City Council of the City of Greensboro regularly, lawfully and unanimously enacted an ordinance designated as 'Chapter 75, Redevelopment Commission of the City of Greensboro;' that thereafter a Certificate of Incorporation was issued by the Secretary of State of the State of North Carolina. Copies of said resolution and Certificate are attached hereto, marked Exhibits 'A' and 'B', and made a part of this petition.

"III. That the petitioner is informed and believes, and alleges upon information and belief, that those persons whose names and addresses are set forth in Exhibit 'C', attached hereto and made a part hereof, are the only persons who have or claim to have an interest in the property described in the attached Exhibit 'D', insofar as the same can, by reasonable

diligence, be ascertained; that said persons are under no legal disability except as stated in Exhibit 'C'.

"IV.   That the tract or tracts of land to be taken by this proceeding are described in Exhibit 'D', attached hereto and made a part hereof.

"V.   That the petitioner is informed and believes, and alleges upon information and belief, that the said property is subject only to such liens and encumbrances as are set forth in Exhibit 'C', attached hereto.

"VI.   That on the 13th day of December, 1955, the Greensboro Planning Board certified an area located within the City of Greensboro to be a blighted and redevelopment area, to be known as CUMBERLAND PROJECT, N. C. R-1. A copy of said certification, together with an amendment thereto, is hereto attached, marked Exhibit 'E', and made a part of this Petition. A map of said area is hereto attached, contained in Exhibit 'F', page 4, and made a part of this Petition. That said area meets all requirements as set out in G.S. 160-454, *et seq.,* designating said area as a slum and blighted area.

"VII.   That thereafter the Redevelopment Commission of Greensboro prepared a redevelopment and slum clearance plan for the area referred to in Paragraph VI hereof, hereinafter referred to as CUMBERLAND PROJECT, N. C. R-1; that said slum clearance and redevelopment plan is attached hereto, marked Exhibit 'F', and made a part of this Petition.

"VIII.   In conformity with such a redevelopment area plan of slum clearance, on the 18th day of August, 1959, after due notice as by law required, a public hearing on said redevelopment and slum clearance plan was held before the Redevelopment Commission of Greensboro, and the plan, as set forth in Paragraph VII hereof, was approved. A copy of the action of the Redevelopment Commission of Greensboro in approving said plan and an amendment thereto is hereto attached, marked Exhibit 'G' and made a part of this Petition. Thereafter the Greensboro Planning Board of the City of Greensboro reaffirmed that CUMBERLAND PROJECT N. C. R-1 is a blighted and slum area within the meaning of G.S. 160-454, *et seq.* A copy of said resolution reaffirming said fact is attached hereto, marked Exhibit 'H' and made a part of this Petition. A copy of a resolution approving said plan, as amended, by the Greensboro Planning Board of the City of Greensboro is hereto attached, marked Exhibit 'I' and made a part of this Petition.

"IX. That the plan of slum clearance as approved by the Greensboro Planning Board and presented to the City Council was heard, after due advertisement, at a public hearing before said Council on the 5th day of October, 1959, as provided by law. That the City Council passed a proper resolution approving said plan as presented, the same being attached hereto, marked Exhibit 'J', and made a part of this Petition.

"X. In conformity with the redevelopment plan, as set forth in paragraph VII hereof and the attached Exhibits, the Redevelopment Commission of Greensboro is proceeding with the plan for redevelopment of the area; that monies have been and will be expended in the accomplishment of said plan.

"XI. The redevelopment area as shown by Exhibit 'F', page 4, attached hereto, is 'a blighted area' within the meaning of G.S. 160-454, *et seq.*, and it is essential to the public welfare, health and safety of the City of Greensboro that the slum conditions and their attendant ills, existing in such slum and 'blighted areas,' be abolished under a plan and conditions which will prevent a recurrence of the same in the future. That the abolition of slum conditions and the taking of private property to effect said plan of redevelopment is and has been held to be for a public purpose.

"XII. The real property described in Exhibit 'D', attached hereto, lies within and is a part of the redevelopment area shown by Exhibit 'F', page 4, attached hereto, and is an integral part of the entire slum clearance and redevelopment project; it is necessary that said real property be taken in order to accomplish the objectives of the slum clearance and redevelopment project.

"XIII. The Redevelopment Commission of Greensboro proposes in good faith to carry out the plan for redevelopment and slum clearance set forth in paragraph VII hereof; that public funds received by the City of Greensboro, together with certain street improvements, installation of water and sewer mains, and other public improvements, have been spent and made by the City of Greensboro for the public purpose of slum clearance; that the petitioner has been advised and so alleges that the City of Greensboro will continue to spend public funds and perform public improvements within the area until said redevelopment plan has been completed; that all of the monies spent and allocated by the City of Greensboro have been and will be

received from sources other than income from *ad valorem* taxes. That the plan of redevelopment heretofore approved by the City Council has qualified under the Home and Housing Finance Act passed by Congress whereby two-thirds (⅔) of all expense and cost of said project is paid from Federal funds as provided in said Act. That petitioner has adequate funds on hand to acquire respondent's property.

"XIV. That petitioner has been unable to acquire said property for that the parties have been unable to agree on the fair market value of same, and respondent has refused to accept the sum offered for the said property by the petitioner. That efforts to acquire said property by purchase having failed, the petitioner, by resolution duly adopted on the 18th day of April, 1961, authorized that said property be condemned as provided by G.S. 160-465 and G.S. 40-11, *et seq.*

"XV. That by G.S. 160-465 the petitioner is granted the power of eminent domain to be exercised in the manner provided in G.S. 160-204, 205, pertaining to said power as exercised by municipalities; that the petitioner has complied with all requirements and requisites set forth in G.S. 160-463 (a)-(k) inclusive; that petitioner has proceeded under G.S. 40-11, 40-12, *et seq.*, entitled Eminent Domain, and has met all requirements thereunder.

"WHEREFORE, petitioner prays that the Court appoint Commissioners of Appraisal for the purpose of determining the amount of compensation that should be paid as damages to the respondent(s) for the taking of said property, as set forth in Exhibit 'D' hereof, and for such other and further relief as to the Court may seem just and proper.

"THIS the 14 day of January, 1963."

The allegations of the Petition in the present case fall far short of showing compliance with the provisions of G.S. Chap. 160, Art. 37, as is required by G.S. Chap. 40, Art. 2. If it should seem burdensome to make all of the necessary allegations and showings each time a Petition is filed to acquire title to a parcel of land, we reiterate here what was said by Justice Higgins in the first *Hagins* case, *supra:* "We may seriously question whether the Legislature contemplated a separate judicial proceeding for each lot or parcel of land any more than it contemplated a separate plan for each parcel. It seems obvious the plan embraces the whole area as a unit. . . . Reason does not appear why the condemnation proceedings covering the whole planned area may not be instituted and all interested

parties served with process and all defenses heard, leaving only the question of just compensation due each respondent to be determined in a separate inquiry."

The admission in the Answer of the allegations of paragraph 3 of the Petition admits only (1) that respondents' property lies within an area, (2) that petitioner has developed and obtained approval of plans for redevelopment, and (3) that in order to carry out the plans it is necessary to acquire respondents' property. This admission does not admit, for example, that the governing body of the community has approved the redevelopment plans. G.S. 160-463(c). It does not admit, for example, the contents or adequacy of the plan for redevelopment. G.S. 160-463(d). Nor does the stipulation ". . . that the only questions remaining to be determined *by the jury* was the fair market value of the two parcels . . ." (Emphasis added.) cure any defect in the pleadings. Whether stipulated or not, the law provides that the only question for determination by the jury is the issue of just compensation. G.S. 40-20.

The exercise of the power of eminent domain is in derogation of common right, and all laws conferring such power must be strictly construed. *Redevelopment Commission v. Hagins*, 258 N.C. 220, 128 S.E. 2d 391; *R. R. v. R. R.*, 106 N.C. 16, 10 S.E. 1041. By the very terms of G.S. 40-12 the Petition must state in detail the nature of the public business and the specific use to which the land will be put. These allegations, we think, are as much jurisdictional in their character as is an allegation of the fact that the petitioner and the respondents have been unable to agree. *R. R. v. R. R.*, *supra*.

G.S. 160-463 provides the minimum that the redevelopment plans must include; it provides the procedures which must be followed before the governing body of the community may approve the plans; and it provides that the governing body of the community must approve the plans before the Commission may acquire property. The procedures required by this statute are designed to guard against arbitrary action by either the governing body of the community or the Redevelopment Commission, and thus afford protection to persons owning property in the affected area. Unless these procedures are strictly followed, a Redevelopment Commission has no authority to exercise the power of eminent domain.

Under the provisions of G.S. 160-465(2), there is an instantaneous condemnation merely by the act of the Commission paying into court the sum specified by the commissioners of appraisal. Therefore, the safeguards so carefully spelled out by the Legislature would mean very little indeed if the Commission were not required to al-

lege its adherence to the prerequisite procedures which give rise to a right to exercise the power of eminent domain.

A Redevelopment Commission, in order to state a cause of action for condemnation, must properly allege, *inter alia,* a redevelopment plan which complies with G.S. 160-463; the compliance with the procedures for approval of the redevelopment plan; and the approval of the plan by the governing body of the area in which the project is located.

The respondents' demurrer *ore tenus* to the Petition for failure to state a cause of action was properly sustained, and the action was properly dismissed.

What has been heretofore said renders moot the respondents' assignments of error, and accordingly we do not pass upon respondents' appeal.

The result is this:

Upon petitioner's appeal, affirmed.

MALLARD, C.J. and PARKER, J. concur.